UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:14-cv-00018-FDW

| CHRISTOPHER ANTHONY BLANTON, | ) |  |
|---|---|---|
|  | ) |  |
| Petitioner, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | ORDER |
| CARLTON B. JOYNER, | ) |  |
|  | ) |  |
| Respondent. | ) |  |

**THIS MATTER** is before the Court on consideration of the claims raised by Petitioner in his pro se petition for a writ habeas corpus, filed pursuant to 28 U.S.C. § 2254. See Rule 4 of the Rules Governing Section 2254 Cases. For the reasons that follow, Petitioner's Section 2254 petition will be denied and dismissed.

## I. BACKGROUND

Petitioner is a prisoner of the State of North Carolina following his conviction in Catawba County Superior Court by a jury on one count of statutory sex offense involving a child who was 13, 14, or 15-years old. On August 1, 2012, Petitioner was sentenced to a term of 16 to 20 years' imprisonment and he appealed to the North Carolina Court of Appeals. The court summarized the factual and procedural history of the case:

> On 2 May 2011, the Catawba County grand jury indicted Defendant, a former law enforcement officer, for statutory sex offense involving a 13, 14, or 15-year-old. Defendant was arrested on 3 May 2011, and a jury trial was held on 30 July 2012. The State's evidence tended to show the following.
>
> In the fall of 2009, Defendant, age forty, met Brian

1

Harris,[1] age fourteen, at Tri-City Baptist Church in Conover, where Defendant and the Harris family attended church services. Defendant met Brian through another youth who attended Tri-City Baptist. Defendant would frequently spend time with Brian. Brian's father and mother believed Defendant was serving as an adult friend and mentor to Brian. Brian testified that Defendant "fulfilled three roles in my life, a father at the time, a best friend, and a brother."

Defendant would also buy Brian gifts such as an iPod, cell phone, and clothes.[2] Defendant would also purchase alcohol for Brian. Defendant provided Brian with alcohol at Defendant's residence on more than one occasion. Defendant also took Brian on work trips with him where Defendant would provide Brian with alcohol. Brian testified to getting intoxicated with Defendant in their hotel room on trips to Virginia and Myrtle Beach.

Brian testified that Defendant would frequently "talk about giving [Brian] oral sex and stuff like that." Further, Brian stated that the topic of oral sex "came up at least once a day or once every other day." On one occasion Brian was staying overnight at Defendant's house, and with whiskey purchased by Defendant, Brian became intoxicated. Brian testified that on that particular night, Defendant tried to convince Brian to allow Defendant to perform oral sex on him. Brian testified that he was drunk and had his pants down when he walked into the room where Defendant was located, and that Defendant proceeded to perform oral sex on Brian. Brian stated that when he realized what was happening, he punched Defendant in the mouth and locked himself in a bedroom. Brian testified that Defendant told him to not tell anyone about what happened.

A few days later, Brian flew to New York to visit family. While in New York, Brian's cousin questioned Brian about his relationship with Defendant. Eventually Brian told his cousin about the incident. Brian made his cousin promise not to tell anyone about what happened. However, Brian's cousin eventually told his parents, who in turn told Brian's mother. After Brian and his mother flew back to North Carolina, Brian's mother told Brian that she knew about the incident and that Brian would not be allowed to see Defendant anymore. Brian's mother instructed Brian to tell his father, which he eventually did. Brian's

---

[1] The court used to a pseudonym in order to protect the minor child's identify.
[2] Brian's parents eventually asked Petitioner to stop providing him with gifts because it was inappropriate.

father notified the sheriff's department.

The sheriff's department subsequently opened an investigation. Officer Rick Younger of the special victims unit was assigned to investigate. Officer Younger specialized in investigating crimes against children. Officer Younger interviewed both Brian and Defendant about the incident. Officer Younger testified that Brian told him that he and Defendant would frequently joke about Defendant having sex with Brian. Often times this was done while Brian and Defendant were drinking. Officer Younger also testified that Brian told him that at the time of the incident, Brian walked into Defendant's bedroom where Defendant was lying on his stomach watching television. Brian told Officer Younger that he got up and pulled his penis out, at which point Defendant said, "I don't want to." Brian then stuck his penis into Defendant's mouth. Despite this, Officer Younger testified that Brian said Defendant and Brian "really got into" the oral sex, which lasted approximately thirty seconds before they stopped. Brian told Officer Younger that Defendant and he were both intoxicated at the time of the incident.

Following Officer Younger's interview with Brian, Defendant voluntarily went to the sheriff's office to be interviewed by Younger. Officer Younger testified that Defendant admitted to giving Brian alcohol on at least two occasions, and that Brian's penis was in Defendant's mouth for about ten seconds. Officer Younger also testified that Defendant characterized Brian as being the aggressor during the incident. Defendant told Younger that Brian came into his bedroom and dared Defendant to touch his penis, and then Brian stuck his penis into Defendant's mouth.

The State at trial also tendered Jeanna Frye as an expert in substance abuse, sex offender treatment, and child sex abuse. Ms. Frye testified in her capacity as an expert witness as well as in her capacity as Brian's counselor. Ms. Frye testified to the contents of her clinical notes regarding some of the activities that Defendant and Brian would engage in when they were together. Ms. Frye referred to Defendant as "the offender" in her notes, and also testified using the term "offender" to describe Defendant during her testimony. Ms. Frye also stated that Brian described his relationship with Defendant as like a father, a friend, and a brother. Ms. Frye testified that she

responded to Brian's characterization of Defendant by explaining to him that:

> Father figures or best friends don't groom their sons for oral sex or masturbation. Best friends don't look at their sons to give them oral sex or masturbation. And brothers don't do the same either. That is usually called incest.

Ms. Frye further testified that Brian told her that Defendant would show him pornography, wrestle and tickle him, tell Brian that he would protect him from other kids and his father, would purchase things to gain Brian's trust, and try to find out what sexual things Brian would be willing to do with him.

Defendant did not offer any evidence.

State v. Blanton, 750 S.E.2d 919 (Table), 2013 WL 5231861, at *1-3 (N.C. Ct. App. Sept. 17, 2003) (unpublished).

On appeal, Petitioner raised two issues. First, Petitioner argued ineffective assistance of counsel based on his attorney's consent to allow Brian's statements to Officer Younger to be presented to the jury, but then failing to request an instruction that informed the jury that they may consider the statements for corroborative purposes, and may consider whether the statements impeached Brian's trial testimony. Second, Petitioner argued that the trial court committed plain error by allowing the State's expert, Ms. Frye, to provide testimony as to whether Petitioner was in fact guilty. The court of appeals rejected each claim and affirmed his criminal judgment in all respects.

Petitioner did not file a petition for discretionary review with the Supreme Court of North Carolina nor did he seek collateral relief in Catawba County Superior Court. Instead, Petitioner filed the present federal habeas petition and his claims will be addressed below.

## II. STANDARD OF REVIEW

When a prisoner files an application for a writ of habeas corpus, a federal court shall not be granted the petition if any claims presented have already been adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

A claim is considered "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree. . ." Young v. Catoe, 205 F.3d 750, 755 n.2 (4th Cir. 2000) (quoting Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999)). A state court's adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "It is not enough for us to say that, confronted with the same facts, we would have applied the law differently; we can accord [the petitioner] a remedy only by concluding that the state court's application of the law in his case was objectively unreasonable." See Tice, 647 F.3d at 103 (citing Williams v. Ozmint, 494 F.3d 478, 483-84 (4th Cir. 2007)). "[W]e will not discern an unreasonable application of federal law unless 'the state court's decision lies well outside the boundaries of permissible differences of opinion.'" Id. at 108 (quoting Goodman v. Bertrand, 467 F.3d 1022, 1028 (7th Cir. 2006)) (citations and internal

quotation marks omitted).

### III. DISCUSSION

A. Ineffective Assistance of Counsel

The Sixth Amendment of the United States Constitution provides that all defendants charged with a crime have the right to effective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) the deficient performance was prejudicial to the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . ." Id. at 689. A petitioner seeking post-conviction relief based on ineffective assistance of bears a "heavy burden in overcoming this presumption." Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id.

Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v.

Fretwell, 506 U.S. 364, 369 (1993)).

Petitioner contends that his trial counsel was ineffective in failing to request a jury instruction which would have informed the jurors that they could consider Brian's prior inconsistent out-of-court statements to Officer Younger for the purpose of impeaching Brian's trial testimony. (5:14-cv-00018, Doc. No. 1 at 16). In assessing this claim, the court of appeals first noted that claims of ineffective assistance of counsel should normally be pursued in a motion for appropriate relief, but that such claims that are "brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required." Blanton, 2103 WL 5231861, at *4 (quoting In re C.W.N., Jr., 742 S.E.2d 583, 585 (2013).

The court of appeals denied this claim on the merits. In rejecting this claim, the court found that although his attorney did not request such an instruction, the trial court nevertheless "instructed the jury during Officer Younger's testimony that '[Officer Younger's testimony regarding Brian's previous out-of-court statements] is not additional evidence as to what actually happened. *It's simply offered for helping you to decide whether or not to believe [Brian's prior in-court testimony]*.' A similar instruction appeared during the jury charge." Id. at *5 (italics in original). The court of appeals provided the following reasoned analysis:

> Thus, the trial judge implicitly instructed the jurors that they could consider whether Brian's out-of-court statements conflicted with his in-court testimony, since the jury was instructed to use the testimony to determine "whether or not" to believe Brian's in-court testimony. This should have been all the more clear to the jurors given defense counsel's strategy of highlighting discrepancies in Brian's accounts of the night in question. For example, defense counsel cross examined Brian as follows:
>
> Q. Do you recall telling Officer Younger that you then walked into [Defendant's]

bedroom?

A. Yes.

Q. And that [Defendant] was laying on his bed watching television?

A. Yes.

Q. And he was laying on his stomach on his bed, his head was at the foot of the bed?

A. Yes.

Q. So, in other words, he was laying backwards on his stomach and he was facing the television?

A. Yes.

Q. And you recall telling Officer Younger that you stuck it out there, meaning your penis, and that [Defendant] said, "I don't want to"?

A. [Defendant] did not say "I don't want to."

Q. Do you know why Officer Younger would have written down that you said that?

[THE STATE]: Objection.

THE COURT: Sustained.

Q. Do you deny you said that to Officer Younger?

A. I'm not denying it. I don't remember.

Q. Okay. And do you recall that you told Officer Younger that you grabbed [Defendant's] head and then it happened?

> A. Yes. He was motioning towards it.
>
> Q. So you're saying [Defendant] was motioning towards his head?
>
> A. No. He was more -- He wouldn't -- Like, he opened his mouth and kind of reached out there more.
>
> Q. Do you know why you didn't tell Officer Younger that?
>
> A. No.
>
> Q. Do you think your memory was fresher thirty days after all that happened versus two years[?]
>
> Accordingly, we do not believe that Defendant's trial became a "farce and mockery of justice," merely because his attorney failed to request an explicit instruction which used the words "impeachment" or "conflicted." *Pratt*, 161 N.C. App. at 163, 587 S.E.2d at 439. We therefore deny Defendant's ineffective assistance of counsel claim.

Id. at *5-6.

Based on the foregoing, the Court finds that Petitioner has failed to establish that the court of appeals ruling on this issue of ineffective assistance of counsel contravened federal law as interpreted by the Supreme Court. Put another way, Petitioner failed to show on appeal that he was entitled to relief under any prong of Strickland and he has failed to do so in this federal habeas proceeding. This claim will therefore be denied.

B.  Trial Court Error

In his final claim, Petitioner argues that the trial court violated his due process rights by allowing the State's expert witness "to testify on the question of Petitioner's guilt." (5:14-cv-00018, Doc. No. 1 at 18). The court of appeals reviewed this issue for plain error explaining that:

9

> The plain error rule is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where the error is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings.

Blanton, 2013 WL 5231861, at *6 (internal citation omitted).

The court of appeals rejected Petitioner's argument after concluding that Petitioner acknowledged on appeal that the statutory sex offense for which he was convicted "is a 'strict liability' crime, to which consent is not a defense." Id. The court found that Petitioner's trial strategy did not involve the question of whether the sexual encounter happened, rather Petitioner's strategy was to convince the jurors to believe that Brian forced Petitioner into the sexual act, and therefore Petitioner did not participate of his own free will. "Indeed, the jury heard evidence that Defendant admitted to Officer Younger that the incident occurred."

> Thus, the question of Defendant's guilt at trial hinged on whether the jury believed that Defendant, a 40-year-old man with a law enforcement background, had been forced against his will to perform oral sex on a 14-year-old boy. Viewed in this light, we cannot hold that Ms. Frye's use of the word "offender," or her brief allusion to the concept of incest in recounting her conversation with Brian, would have damaged Defendant's credibility such that it "had a probable impact on the jury's finding that the defendant was guilty." Defendant's argument is overruled.

Blanton, supra.

Assuming that Petitioner fairly presented this due process argument on direct appeal, the Court finds that Petitioner has failed to show that the court of appeals ruling on this issue entitles him to relief under either provision of § 2254(d).[3] The evidence of Petitioner's guilt was amply supported by Brian's in-court testimony, any inconsistent out-of-court statements notwithstanding, and by the testimony of Officer Younger who testified that Petitioner admitted to him that Brian's penis was in Petitioner's mouth for "about ten seconds." Id. at *2. As the court of appeals observed, Petitioner failed to demonstrate that the use of the word offender by Ms. Frye had a "probable impact" on the jury's verdict in light of the other damning evidence presented at trial. Id. at *6.

## IV. CONCLUSION

For the reasons stated herein, the Court finds that Petitioner has failed to present any meritorious claims for relief and his § 2254 petition will be denied.

**IT IS, THEREFORE ORDERED** that Petitioner's § 2254 petition is **DENIED** and **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the

---

[3] Even assuming that Petitioner did not fairly present his due process argument to the state courts, the Court nevertheless finds that his argument is unavailing and should be denied on the merits. See 28 U.S.C. § 2254(b)(2).

dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Clerk of Court is directed to terminate this civil case.

**IT IS SO ORDERED.**

Signed: December 3, 2014

Frank D. Whitney
Chief United States District Judge